**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
                               :
SAMUEL BIBBY,                  :
                               :   CIVIL ACTION NO. 04-2937 (MLC)
          Petitioner,          :
                               :       MEMORANDUM OPINION
          v.                   :
                               :
LYDELL SHERRER et al.,         :
                               :
          Respondents.         :
───────────────────────────────:
```

**APPEARANCES:**

SAMUEL BIBBY, #413759
Northern State Prison, Newark, New Jersey  07114
Petitioner Pro Se

JOHN KAYE, Monmouth County Prosecutor
MARK P. STALFORD, Assistant Prosecutor
Monmouth County Court House, Freehold, New Jersey  07728
Attorney for Respondents

**COOPER, District Judge**

Petitioner seeks a writ of habeas corpus challenging his conviction pursuant to 28 U.S.C. § ("Section") 2254(a). Respondents filed an answer seeking dismissal of the petition on the merits and for failure to exhaust available state remedies. Petitioner filed his traverse in opposition to the answer.  For the reasons expressed below, the Court will dismiss the petition and decline to issue a certificate of appealability.

**BACKGROUND**

Petitioner challenges a judgment of conviction entered in New Jersey Superior Court, Monmouth County, on October 27, 2000, after a jury found him guilty of possessing a controlled dangerous

substance ("CDS") with intent to distribute within a school zone
and near a public facility.  (Pet., at ¶¶ 1-2.)  Petitioner was
sentenced to 10 years imprisonment with a 5-year period of parole
ineligibility.  (Id. at ¶ 3.)  Petitioner appealed, but the New
Jersey Appellate Division affirmed his conviction on March 24,
2003.  (Id. at ¶ 9; Ans., at ¶ 9.)  The New Jersey Supreme Court
denied his petition for certification on July 14, 2003.  (Id.)

Petitioner then brought this petition.  The Court notified
him of the consequences of filing such a petition, and gave him
an opportunity to withdraw the petition and file one all-inclusive
petition pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000).

The petition lists four grounds for relief:

(I) "The state's failure to establish the chain of custody
to support the trial evidence [as to] 29 bags [of a CDS] taken
from the petitioner."  (Pet. Mem., at 1-6.)

(II) "The state's failure to provide the defense with the
Brady request for the chemist's curriculum vitae denied the
petitioner confrontation rights."  (Id. at 7-9.)

(III) "The state failed to comply with the Brady request for
documentation to support the [assertion that the real estate]
properties named were within a drug free zone."  (Id. at 10-12.)

(IV) "The [trial] court erred by not granting a mistrial
based on the [entry of the] state's expert opinion the petitioner
[was] involved in street level narcotic sales."  (Id. at 13-15.)

## STANDARD OF REVIEW

Section 2254(a) grants a federal court jurisdiction to entertain a claim that a state prisoner is in custody in violation of the Constitution, laws or treaties of the United States.  A habeas corpus petition must meet "heightened pleading requirements."  McFarland v. Scott, 512 U.S. 849, 856 (1994). The petition must "specify all the grounds for relief which are available to the petitioner," and set forth "the facts supporting each of the grounds thus specified."  See Rule 2(c) of Rules Governing Section 2254 Cases.

It "is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Barry v. Bergen County Probation Dep't, 128 F.3d 152, 159 (3d Cir. 1997).  A federal court must dismiss a habeas corpus petition, summarily or otherwise, if it does not assert a constitutional violation. Siers v. Ryan, 773 F.2d 37, 45 (3d Cir. 1985); Rule 4 of Rules Governing Section 2254 Cases.[1]  "If a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable.

---

[1]  Rule 4(c) provides:  "If it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be notified."  The Advisory Committee Notes to Rule 4 emphasize that "'notice' pleading is not sufficient, for the petition is expected to state facts that point to a 'real possibility of constitutional error.'" (citing Aubut v. Maine, 431 F.2d 688, 689 (1st Cir. 1970)).

3

It is unnecessary in such a situation to inquire whether the prisoner preserved his claim before the state courts." Engle v. Isaac, 456 U.S. 107, 120 n.19 (1982).  A federal court is not permitted to transform a ground asserting a violation of state law into a ground raising a violation of the federal Constitution.[2]  A federal court also may not consider a federal claim that can be discerned from the facts of the case but is not asserted in the petition.[3]

A federal court must give deference to determinations of state courts.  Duncan v. Morton, 256 F.3d 189, 196 (3d Cir. 2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996).  Federal courts "must presume that the factual findings of both state trial and appellate courts are correct, a presumption that can only be

---

[2]  See Engle, 456 U.S. at 119-20 & n.19 (insofar as petitioners simply challenged correctness of self-defense instructions under state law, petitions alleged no deprivation of federal rights, and § 2254 was inapplicable); Kontakis v. Beyer, 19 F.3d 110, 116-17 & n.10 (3d Cir. 1994) (where petitioner asserted in petition that exclusion of testimony violated rights under state law, federal court may not consider ground, not set forth in petition, that exclusion of testimony violated federal due process rights).

[3]  See Withrow v. Williams, 507 U.S. 680, 695-96 (1993) (where petition claimed that police had elicited petitioner's statements without satisfying Miranda, district court erred when it "went beyond the habeas petition and found the statements [petitioner] made after receiving the Miranda warnings to be involuntary under due process criteria"); Baker v. Barbo, 177 F.3d 149, 156 n.7 (3d Cir. 1999) (where petition asserts ineffective assistance of counsel during plea negotiations and trial, district court may not consider ground, evident from facts but not raised in petition, that counsel was ineffective by failing to advise petitioner faced longer sentence by appealing conviction).

4

overcome on the basis of clear and convincing evidence to the contrary." Stevens v. Del. Corr. Ctr., 295 F.3d 361, 368 (3d Cir. 2002); see 28 U.S.C. § 2254(e)(1).

Where a federal claim was "adjudicated on the merits" in state court proceedings, Section 2254 does not permit habeas relief unless adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A decision is contrary to a Supreme Court holding if the state court contradicts the governing law set forth in the Supreme Court's cases, or if it confronts a set of facts that are materially indistinguishable from a Supreme Court decision and nevertheless arrives at a different result. Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

Under the "'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the [Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. Whether a state court's application of federal law is "unreasonable" must be judged objectively; thus, an application may be incorrect yet still be reasonable. Id. at 409-10.

If a petitioner did not present certain grounds ("Unexhausted Grounds") to the state courts on direct appeal or in a petition for post-conviction relief and the claim is not exhausted, a federal court should not dismiss the petition as a mixed petition if none of these Unexhausted Grounds present a colorable federal claim.  See 28 U.S.C. § 2254(b)(2) (application for writ of habeas corpus may be denied on merits, notwithstanding failure of applicant to exhaust state remedies); Lambert v. Blackwell, 134 F.3d 506, 515 (3d Cir. 1997) (court may deny unexhausted petition on merits under § 2254(b)(2) "if it is perfectly clear that the applicant does not raise even a colorable federal claim").

## DISCUSSION

### I.   Ground One: Chain of Custody

Petitioner asserts that his Fifth and Fourteenth Amendments rights were violated when the trial court denied his "request for an evidentiary hearing" as to the chain of custody over the bags of the alleged CDS.  (Pet. Mem., at 1.)  He asserts that:  upon his arrest, a police officer seized three bundles of the alleged [CDS] from him; the officer counted 29 individual bags of the CDS, filled out a form, and relinquished the bags to his police department; and, it was determined eventually that the state no longer had the original 29 bags, but rather had only 27 bags, which he believes to be "substitutes."  (Id. at 1-2.)

The state trial court declined to hold a separate evidentiary hearing as to the chain of custody over this evidence, stating

that this question is "a trying issue" and, thus, should be made part of the trial so "the State at trial [could] prove the chain of evidence." (<u>Id.</u> at 2.)  In the trial, when "[the custodian was] practically unavailable for trial," the trial court (a) interpreted a state law as permitting it to address the discrepancy, and (b) concluded it was "satisfied that [the CDS] seized" was indeed the CDS seized from petitioner.  (<u>Id.</u> at 3.)

Petitioner asserts that this finding was erroneous under state law.  (Pet. Mem., at 3-6 (relying on <u>State v. Brunson</u>, 132 N.J. 377 (1993); <u>State v. Binns</u>, 222 N.J.Super. 583 (App. Div. 1988); <u>State v. Brown</u>, 99 N.J.Super. 22 (App. Div. 1968); and <u>State v. Johnson</u>, 90 N.J.Super. 105 (App. Div. 1965)).)  But Petitioner does not indicate how the difference between his interpretation of those state cases and that of the state trial court implicates his constitutional rights.

Petitioner's Ground One contentions are based on state law, and thus not subject to review here.  Even if his contentions are valid, "errors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause," <u>Johnson v. Rosemeyer</u>, 117 F.3d 104, 110 (3d Cir. 1997), and it "is well established that a state court's misapplication of its own law does not generally raise a constitutional claim."  <u>Smith v. Horn</u>, 120 F.3d 400, 414 (3d Cir. 1997) (cites and quotes omitted); <u>see</u> <u>Smith v. Zimmerman</u>, 768 F.2d 69, 71, 73 (3d Cir. 1985).  "Before a federal

court may overturn a conviction resulting from a state trial . . .
it must be established not merely that the [state's action] is
undesirable, erroneous, or even 'universally condemned,' but that
it violated some right which was guaranteed to the defendant by
the [United States Constitution or a federal provision]."
Marshall v. Hendricks, 307 F.3d 36, 64 (3d Cir. 2002) (quoting
Smith v. Phillips, 455 U.S. 209 (1982)); see Siers, 773 F.2d at
45 (federal court must dismiss petition if it does not state
constitutional violation); Rule 4 of Rules Governing Section 2254
Cases; see also Engle, 456 U.S. at 120 n.19 (if state prisoner
alleges no deprivation of federal right, § 2254 is inapplicable).

Petitioner argues in his traverse that he merely omitted the
word "Brady" in the heading of Ground One in the petition, but
that his brief filed during his direct appeal (not made part of
the petition) addressed the Brady issue indirectly.  Hence, it
appears that petitioner is attempting to use his traverse to
inject a constitutional aspect into his claims.  Petitioner,
however, cannot rely on anything other than the petition to set
forth all relevant claims and facts.  See Mayle v. Felix, 125
S.Ct. 2562, 2566, 2570 (2005).

> Rule 2(c) of the Rules Governing Habeas Corpus
> Cases requires a . . . detailed statement.  The
> habeas rule instructs the petitioner . . . to
> "state the facts supporting each ground." . . .  A
> prime purpose of Rule 2(c)'s demand that habeas
> petitioners plead with particularity is to assist
> the district court in determining whether the State
> should be ordered to 'show cause why the writ

8

> should not be granted." § 2243.  Under Habeas
> Corpus Rule 4, if "it plainly appears from the
> petition . . . that the petitioner is not entitled
> to relief in district court," the court must
> summarily dismiss the petition without ordering a
> responsive pleading.  If the court orders the State
> to file an answer, that [answer] must "address
> [only] the allegations in the petition." Rule 5.

Id. Hence, petitioner's Ground One fails to raise a federal claim.

Furthermore, petitioner's mere mentioning of Brady on his
direct state appeal did not meet exhaustion requirements, because
the state courts had to be afforded a meaningful "opportunity to
pass upon and correct alleged violations of its prisoners'
federal rights." Wilwording v. Swenson, 404 U.S. 249, 250
(1971); Picard v. Connor, 404 U.S. 270, 275 (1971); Evans v. Ct.
of Com. Pleas, 959 F.2d 1227, 1230 (3d Cir. 1992).  Exhaustion
has the practical effect of permitting development of a complete
factual record in state court, to aid the federal courts in their
review.  See Castille v. Peoples, 489 U.S. 346, 349 (1989).
Thus, the claims heard by the state courts must be the
"substantial equivalent" of the claims asserted in the federal
habeas petition.  Picard, 404 U.S. at 275.  Reliance on the same
constitutional provision is not sufficient; the legal theory and
factual predicate must also be the same.  Id. at 277.

Even if this Court were to entertain petitioner's assertion
that his reference to Brady implicated his due process rights,
such an argument would not change the result here.  Under Brady,
state and federal prosecutors must turn over exculpatory and

9

impeachment evidence, whether or not requested by the defense, where the evidence is material to either guilt or punishment. See Strickler v. Greene, 527 U.S. 263 (1999); Giglio v. United States, 405 U.S. 150 (1972).  In Giglio, the Supreme Court held that "suppression of material evidence justifies a new trial irrespective of the good faith or bad faith of the prosecution. . . . When the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within this general rule." 405 U.S. at 153-54 (internal quotes and cites omitted).  Brady does not require a prosecutor to "deliver his entire file to defense counsel," but only to disclose items that are material to a defendant's guilt or punishment.  See United States v. Bagley, 473 U.S. 667, 675 (1985).

Discrepancies in the amount of CDS attributable to the chain of custody do not qualify as material evidence, unless a discrepancy affects the degree of offense.  See United States v. Arnulfo-Sanchez, 71 Fed.Appx. 35 (10th Cir. 2003), cert. denied, 540 U.S. 1140 (2004).[4]  If the criminal defendant believes that such discrepancy is indicative of tampering with evidence, the issue of tampering goes to the weight of evidence — rather than to admissibility — and is determined by the trier of fact.

---

[4]  Petitioner does not argue that the discrepancy would have affected the degree of the offense.

10

> The standard for the admission of exhibits into
> evidence is that there must be a showing that the
> physical exhibit being offered is in substantially
> the same condition as when the crime was committed.
> . . . A perfect chain of custody is not a
> prerequisite to admission, as gaps in the chain
> normally go to the weight of the evidence rather
> than its admissibility. Furthermore, the government
> need only show that it took reasonable precautions
> to preserve the original condition of the evidence,
> it does not have to exclude all possibilities of
> tampering with the evidence . . . . A presumption
> of regularity exists with respect to official acts
> of public officers and, absent any evidence to the
> contrary, the court presumes that their official
> duties have been discharged properly.

United States v. Moore, 425 F.3d 1061, 1071 (7th Cir. 2005) (cites

and quotes omitted).  Hence, petitioner's reliance on Brady to

support his assertion of a due process violation is misplaced.

While the request for the chain-of-custody certificate during

petitioner's pre-trial period was properly labeled as a Brady

request, the issue of a discrepancy in the amount of bags of CDS

seized from him was conclusively resolved by petitioner's jury,

which found that the CDS presented at trial was the CDS seized

from him.  Factual determinations made by the trier of fact as to

a discrepancy in the amount of bags of CDS are presumed to be

correct.[5]  Since petitioner merely contests whether the facts

presented were sufficient to warrant the finding that the 27 bags

---

[5]  The presumption of correctness, which attaches to the
factual findings made in state court, may be overcome only by
clear and convincing evidence, with the burden of persuasion on
the petitioner.  See 28 U.S.C. §§ 2254(d)-(e).  Here, petitioner
in his opening statement "essentially admitted possession."
State v. Bibby, A-2926-00T4 (N.J. App. Div. Mar. 24, 2003).

of CDS were extracted from him, his Ground One contention is without merit.  <u>See</u> <u>Smith</u>, 455 U.S. at 212-19; <u>Hubbard v. Jeffes</u>, 653 F.2d 99, 102 (3d Cir. 1981).

## II.  Ground Two: Curriculum Vitae

Petitioner asserts that, after the state's laboratory technician ("technician") identified the substance seized from him as the CDS at issue, his constitutional rights were violated when the state failed to provide him with either a legible full copy of the technician's <u>curriculum vitae</u> or an opportunity to face the technician at trial.  (Pet. Mem., at 7.)  Petitioner states that he (a) relies on various state provisions and state case law to support his points, and (b) believes that, because of the state's failure to produce the technician or his <u>curriculum vitae</u>, his Sixth Amendment Confrontation Clause right and Fourteenth Amendment due process right were violated.  (<u>Id.</u> at 7-9.)

For the reasons stated in Part I herein, petitioner's reliance on state provisions and case law is misplaced since, even if his contentions are valid, "it is well established that a state court's misapplication of its own law does not generally raise a constitutional claim."  <u>Smith</u>, 120 F.3d at 414; <u>see</u> <u>Engle</u>, 456 U.S. at 120 n.19; <u>Smith</u>, 768 F.2d at 71, 73; <u>Marshall</u>, 307 F.3d at 64; Rule 4 of Rules Governing Section 2254 Cases.

Petitioner's claims asserting a violation of his rights under the Sixth Amendment's Confrontation Clause, applicable to

the states via the Fourteenth Amendment, are also without merit.
While the Confrontation Clause prevents restrictions on
cross-examination that "effectively . . . emasculate the right of
cross-examination itself," Delaware v. Fensterer, 474 U.S. 15, 19
(1985), the Confrontation Clause is not "a constitutionally
compelled rule of pretrial discovery," Pennsylvania v. Ritchie,
480 U.S. 39, 52 (1987).  It "only guarantees an opportunity for
effective cross-examination, not cross-examination that is
effective in whatever way, and to whatever extent, the defense
might wish."  Id. at 53 (cite and quotes omitted).  Also,
Confrontation Clause errors are subject to harmless error
analysis.  See United States v. Reynolds, 171 Fed.Appx. 961, 966
(3d Cir. 2006).

Since the purpose of the Confrontation Clause is to secure a
criminal defendant's right to cross-examine the witnesses against
him, see Ohio v. Roberts, 448 U.S. 56, 73-74 (1980), the
Confrontation Clause is not violated if the defendant stipulates
that the substance at issue is the type of controlled substance
asserted by the state, and such stipulation dispenses with the
need for a laboratory technician to testify.   See Bailey v.
Mitchell, 271 F.3d 652, 657 (6th Cir. 2001) (relying on United
States v. Mezzanatto, 513 U.S. 196 (1995)).

Petitioner here neither contested nor filed an objection as
to the findings made in the technician's certificate establishing

13

that the substance seized was a CDS and, moreover, the type of CDS alleged by the state, effectively stipulating to the finding under state law.  <u>See</u> N.J.S.A. § 2C:35-19.  Therefore, the issue of the technician's <u>curriculum vitae</u> or in-court testimony is inapposite to petitioner's Confrontation Clause rights, or his due process rights, since (a) the petition does not indicate that he was prevented from exercising his rights to object to the content of the technician's findings; (b) he did not express any doubt on the content of the technician's findings; and (c) he effectively stipulated, through the statutorily set mode, to the content of the findings by waiving his right to object.[6]

Improperly using his traverse to raise a new claim, <u>see</u> <u>Mayle</u>, 125 S.Ct. at 2566, 2570, petitioner asserts that he did not intend to waive his right to object to the content of the report, but was prevented from doing so by not being furnished with a "complete legible set of all the lab documents," <u>i.e.</u>, by missing the <u>curriculum vitae</u> of the technician in violation of <u>Brady</u>. (Traverse, at 6.)  However, even though petitioner was furnished with a poor and potentially incomplete copy of the technician's <u>curriculum vitae</u>, or even a poor copy of the report, this did not prevent him from objecting to the content of the report.  The

---

[6] Even though it appears that petitioner's express stipulation was not sought by the state, his waiver of his statutory right to object renders that omission a harmless error. <u>See</u> <u>Reynolds</u>, 171 Fed.Appx. at 966.

applicable provision, N.J.S.A. § 2C:35-19, states that "[a]n opposing party who intends to object to the admission into evidence of a certificate shall give notice of objection and the grounds for the objection within 10 days upon receiving the adversary's notice of intent to proffer the certificate." Nothing in this provision indicates that the party "who intends to object to the admission into evidence of a certificate" should either wait for a perfect certificate or limit his objections to the issue of a curriculum vitae and refrain from attacking the legibility or the content of the report itself.  See id.  Since petitioner effectively stipulated to the content of the report, his claim that his Confrontation Clause rights were violated by the state's failure to submit the technician's curriculum vitae or the technician himself is without merit.

### III. Ground Three: Documentary Evidence

Petitioner argues that the finding that he was engaged in the prohibited activity within the boundaries of "a school zone and public facilities" was improperly based on such evidence as geographic maps and ordinances rather than on other "documentation and witnesses."  (Pet. Mem., at 10-11.)  He also argues that the finding that he was engaged in prohibited activity within the boundaries of "a school zone and public facilities" was improperly resolved by the trial judge instead of being submitted to a jury under the holding of Apprendi v. New Jersey, 530 U.S. 466 (2000).

15

Petitioner, as to the first contention, relies on state case law even though he asserts violations of his Fifth, Sixth and Fourteenth Amendments rights.  The issue of inapplicability of state-law-based arguments to federal claims has been discussed supra, see Part I, and applies to evidentiary issues as well.  In reference to the federal Constitution, petitioner claims that his rights were violated because the state chose to rely not on witness's statements but rather on geographic maps and ordinances that omitted listing the specific schools or public facilities by name, address, leasehold and usage.  (Pet. Mem., at 10-11.)[7]

The Due Process Clause of the Fourteenth Amendment forbids a state from convicting a person of a crime without proving the elements of that crime beyond a reasonable doubt.  Fiore v. White, 531 U.S. 225 (2001).  However, the Fourteenth Amendment (or the Fifth, or Sixth Amendment) does not provide for a criminal defendant's right to choose the method or mode by which the state proves these elements.

The state here submitted maps and ordinances, which comprised evidence sufficient and admissible under the applicable state law, i.e., N.J.S.A. §§ 2C:35-7 and 2C:35-7.1, the constitutionality of which, as drafted, petitioner does not

---

[7]  Although the petition does not make such an argument, petitioner unduly employs his traverse to state that the ordinance was silent as to the lease and actual usage of certain federal and religious facilities for the state and municipal public purposes or schooling.  (Traverse, at 4.)

challenge.  Similarly, petitioner does not challenge that his geographic whereabouts during the underlying prohibited activity were the whereabouts asserted by the state.  Rather, it appears that petitioner challenges the constitutionality of the aforesaid provisions as applied, since the maps and ordinances offered placed his whereabouts within the ordinance-outlined geographic boundaries instead of (a) listing each school building and public facility by name, address and leasehold; (b) verifying that the buildings or facilities were actually used for schooling or public purposes; and (c) calculating the distance from these buildings or facilities to his whereabouts to show that he was within the statutorily-provided distance from such buildings or facilities.  (Pet. Mem., at 11, Traverse, at 4.)

Where a party alleges that a provision is facially correct but unconstitutional as applied, a statutory-construction analysis is inapplicable.  See Berwind Corp. v. Comm'r of Soc. Sec., 307 F.3d 222, 241 (3d Cir. 2002).  Rather, the provision is deemed unconstitutional "as applied" if the outcome of the application encroaches on an identifiable constitutional right.  See Emert v. Missouri, 156 U.S. 296 (1895).  There does not appear to be a constitutional right incompatible with an identification of a geographic area through the use of ordinances.[8]  While petitioner

---

[8]  It appears that petitioner disagrees with the mode of detecting the geographic boundaries applicable to the ordinances.
(continued...)

apparently prefers proof by other documents, the Fifth, Sixth or Fourteenth Amendments do not allow petitioner such choice, and there are no grounds to second-guess the finding of the state trial court that the ordinance sufficiently outlined the boundaries of the geographic area at issue.  (See Pet. Mem., at 11 (acknowledging trial court's finding of sufficiency but contesting conclusion under petitioner's reading of state law).)

Therefore, Petitioner's claim that he was constitutionally entitled to have the boundaries of the area at issue be shown through some mode other than maps and ordinances has no merit. See Engle, 456 U.S. at 136 (noting, for habeas relief, petitioner cannot state claim by merely attaching constitutional label to set of factual allegations that do not describe a violation of a constitutional right).

Petitioner's contention — that the issue of whether he was involved in the prohibited conduct while within a certain area was unduly resolved by the sentencing court rather than the jury in violation of Apprendi — is also unavailing.  Apprendi holds that a state statutory scheme cannot stand under the Fourteenth Amendment's Due Process Clause if the scheme (a) allows a jury to convict a defendant of a lesser offense; but (b) during a

---

[8](...continued)
But it is not the province of a federal court to scrutinize the methodology used unless the process involves a "facially irrational" suspect classification.  See Shaw v. Reno, 509 U.S. 630 (1993).

subsequent and separate proceeding, allows a judge to impose a punishment for a more severe offense through the judge's own finding that additional elements of the offense were duly established during the jury trial.  See 530 U.S. 466.  The Supreme Court clarified that:

> not all facts affecting the defendant's punishment are elements.  After the accused is convicted, the judge may impose a sentence within a range provided by statute, basing it on various facts relating to the defendant and the manner in which the offense was committed.  Though these facts may have a substantial impact on the sentence, they are not elements, and are thus not subject to the Constitution's indictment, jury, and proof requirements.  Some statutes also direct judges to give specific weight to certain facts when choosing the sentence.  The statutes do not require these facts, sometimes referred to as sentencing factors, to be alleged in the indictment, submitted to the jury, or established beyond a reasonable doubt.

Harris v. United States, 536 U.S. 545, 549-50 (2002).  Thus, a joint reading of Apprendi and Harris indicates that the constitutional inquiry can be triggered only if the contested element was not submitted to the jury for consideration. Conversely, any finding by the jury must be considered by the sentencing court when it fashions the applicable punishment.  Cf. Harris, 536 U.S. at 549-50.[9]

---

[9]   In Harris, the petitioner, who sold narcotics with an unconcealed semiautomatic pistol at his side, was arrested for violating federal drug and firearms laws, under the statute providing that any person who, during a drug trafficking crime, possesses a firearm in furtherance of such crime, shall, in addition to the punishment provided for such crime, be sentenced to an enhanced term of imprisonment if a firearm was brandished.
(continued...)

Here, the grand jury issued an indictment expressly charging petitioner with, inter alia, possession of a CDS with intent to distribute within the statutorily stated distances from a school property and various public facilities, and the petit jury found him guilty of the charge.  Thus, the question of petitioner's illegal activities while within the boundaries of the "school zone and public facilities" area was submitted to and determined by the petit jury in accordance with Apprendi.  The trial court merely sentenced petitioner in accordance with the jury's finding.  Therefore, Apprendi is satisfied here, and these contentions are without merit.

## IV.  Ground Four: Expert's Opinion

Petitioner asserts that "the State's expert [witness] crossed the forbidden line . . . when [the expert] told the jury: (1) police officers observed [the CDS transaction]; (2) [he] was . . . in possession of 27 bags of [CDS]; and (3) [such amount of CDS] indicate[s] involvement in street-level narcotic sales."  (Pet.

---

[9](...continued)
See id. at 533-34.  The Government proceeded on the assumption that brandishing is a sentencing factor to be considered by the judge after the trial and, thus, alleged to the grand jury and petit jury only the elements from the statute's principal paragraph, i.e., the drug trafficking crime and possession of firearm.  Id. at 534.  Following the petitioner's conviction on the elements presented, he was sentenced to an enhanced term on the grounds of the "brandishing" factor.  The petitioner asserted that his sentence was improper since the "brandishing" factor was an element of offense subject to jury finding.  The court refused to accept the petitioner's argument, and the Fourth Circuit and the United States Supreme Court affirmed.  See id.

Mem., at 13-15 (relying on state law).)  Respondents argue that
"an expert may testify that the CDS is possessed with intent to
distribute by review[ing] factors such as 1) quantity; 2)
quality; and 3) packaging." (Ans., at 31.)  However, contrary to
respondents' answer, petitioner states that his Ground Four
challenge was not based on an objection to a hypothetical question
and the expert's opinion as to what transaction qualifies as a
street-level sale, but on objection to the expert's testimony that
(a) petitioner made the transaction at issue and possessed 27 bags
of a CDS, and (b) the transaction was seen by four police officers
rather than the one who testified to it.  (Pet. Mem., at 14-15.)

     The transcript of the testimony of the expert witness at
issue reads as follows:

> QUESTION:  In this case, what did you review rendering
> your expert opinion?
> EXPERT WITNESS:  I reviewed, [on a date which was long
> after petitioner's arrest,] police officers from [a
> certain police department who] working in the area [at
> issue during the day of the arrest, and who] observed
> what they believed to be a transaction between two
> individuals, [petitioner and another person].  As a
> result of those observations, [petitioner] was found to
> be in possession of 27 bags of [CDS]; at which point[,]
> it is my opinion[,] that the possession . . . of 27 bags
> [of CDS] is indicative of someone [who] is involved in
> street-level narcotics sales.

(Ans. Ex. 13., Tr. at 109-10.)

     The state trial court found that the above-quoted statement
was a prelude to the expert's testimony (a) made immediately after
the above-quoted statement, and (b) rendering the opinion as to a

21

hypothetical which depicted circumstances of "a" street-level sale without referring to petitioner.  (Id. at 115-16.)  Petitioner, however, maintains that the trial court did not address his objection, stating that his "position [was that the expert] was actually testifying that [petitioner] sold [CDS to another person]," and that such expert testimony violated applicable state law.  (Pet. Mem., at 15-16.)[10]  Since both the petition and traverse are silent as to any federal aspects of these Ground Four contentions, they are without merit for failure to state a federal claim.  See Smith, 120 F.3d at 414; see also Engle, 456 U.S. at 120 n.19; Smith, 768 F.2d at 71, 73; Marshall, 307 F.3d at 64; Rule 4 of Rules Governing Section 2254 Cases.

Petitioner's assertion that the expert testified to the expert's factual knowledge (i.e., that petitioner executed the sale and four specific officers had an opportunity to and did observe the sale) is without merit, as the expert clarified that the expert's information was (a) not first-hand but rather obtained through examination of unspecified number of unspecified police officers, and (b) gathered long after petitioner's arrest.  (Ans., Ex. 13., Tr. at 110.)  Thus, even if this Court were to construe a constitutional basis in petitioner's Ground Four claim, it would be without merit as factually unwarranted.

---

[10]  It appears that, during the trial and his appeals, petitioner did not object to the expert's use of plural "officers" and "they" instead of singular "officer" and "he." (Ans., Ex. 13., Tr. at 117.)

**V.   Certificate of Appealability**

The Court denies a certificate of appealability.  The petitioner has not made "a substantial showing of the denial of a constitutional right" under 28 U.S.C. § 2253(c)(2)..

**CONCLUSION**

The Court will issue an appropriate order dismissing the petition for a writ of habeas corpus.


　　　　　　　　　　　　　s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge


23